UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| MALIKAH ABDUL-MUSAWIR WILLIAMS, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )   Case No.: 4:20-cv-41 |
| NEWPORT NEWS SCHOOL BOARD, | ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

Before the Court is Defendant Newport News School Board's ("Defendant") Motion to Dismiss for Failure to State a Claim and accompanying memorandum. ECF Nos. 16–17. Plaintiff Malikah Abdul-Musawir Williams ("Plaintiff") filed a Brief in Opposition, ECF No. 25, and Defendant file a Reply Brief thereto, ECF No. 29. Accordingly, the Motion is ripe for decision. The undersigned makes this ruling without a hearing pursuant to Fed. R. Civ. P. 78(b) and E.D. Va. Local Civ. R. 7(J). For the following reasons, Defendant's Motion to Dismiss, ECF No. 16, is **GRANTED IN PART and DENIED IN PART.**

### I. FACTUAL AND PROCEDURAL BACKGROUND

This matter concerns alleged discrimination that occurred during Plaintiff's employment as a teacher in the Newport News School system.[1] Plaintiff is a Muslim woman who had been employed as special education teacher with the Defendant from 1999 through 2017. ECF No. 1 at ¶ 11. During the course of her employment, Plaintiff describes numerous events that she alleges

---

[1] In accordance with the applicable legal standard when considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court assumes as true all facts plausibly alleged in the Complaint. *See* Section II, *infra*.

1

amount to discrimination, retaliation, and constructive discharge on the basis of religion. *Id.* at ¶¶ 12-57. On September 15, 2016, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant ("the First EEOC Charge"). ECF No. 17, attach. 1. In the First EEOC Charge, Plaintiff selected the options for discrimination based on both retaliation and religion. *Id.* She also described a series of allegedly harassing events that occurred as early as 2007 until August 24, 2016, which was the date indicated as the "Latest Date Discrimination Took Place." *Id.* Plaintiff later elaborated upon that description in her Complaint and Brief in Opposition:

a. Defendant authorized the recitation of prayers at mandatory faculty meetings, functions and activities in 2001-207. ECF No. 1 at ¶ 15.

b. Defendant authorized the playing of Gospel music and music associated with Christmas beginning in 2011. *Id.* at ¶ 16.

c. Plaintiff was moved to different classrooms each year "due to her opposition to prayer recitation" in 2002 through 2004 and was not given her own classroom in 2005 and 2006. *Id.* at ¶¶ 18–19.

d. Plaintiff was involuntarily transferred from high school to elementary school in 2008, with an accompanying teaching assignment change and docking of pay. *Id.* at ¶¶ 20–21.

e. "Due to her religion, her previous opposition to . . . prayer recitation . . . , and her prior filing of a charge of discrimination" with U.S. Department of Education OCR, Plaintiff underwent classroom changes, and switched grade levels in 2008–2010. *Id.* at ¶ 22.

f. In 2009, Plaintiff filed a case for the right to grieve with the Newport News Circuit Court, *Id.* at ¶ 23, following which, in 2010, she was involuntarily transferred schools with changes in duties. *Id.* at ¶ 24.

g. In the 2010–2011 school year, Plaintiff filed another complaint regarding Defendant's authorization of prayer during meetings and events, following which her classroom was moved in 2011 and 2012. *Id.* at ¶¶ 25–26.

h. In 2015, Plaintiff was given religious pamphlets by a co-worker. *Id.* at ¶ 27.
i. In June 2016, Defendant authorized Christian prayer recitation during a mandatory end-of-year function; Plaintiff's request to be excused was refused. *Id.*

2

at ¶ 29.

j.  On August 16, 2016, Dr. Mills, her Principal, notified Plaintiff that she was required to switch classrooms two months after other teachers were notified of similar changes.  *Id.* at ¶ 30.

k.   On September 15, 2016, Plaintiff filed a charge of discrimination alleging religious discrimination, harassment and retaliation.  *Id.* at ¶ 31.

l. On specific dates in September, October, and November, 2016, through February 2017, Plaintiff "advocated" on behalf of disabled/special education students' rights and requested Defendant comply with laws regarding such students.  *Id.* at ¶ 32.

m. On September 19, 2016, Dr. Mills belittled Plaintiff during a meeting for asking a question, while he did not belittle other faculty members for asking questions.  *Id.* at ¶ 33.

n. On October 21, 2016, a co-worker yelled "Praise Jesus" into Plaintiff's classroom;  Plaintiff submitted a complaint of religious discrimination and retaliation to Defendant's Human Resources ("HR") department.  A meeting was held that day with HR to discuss her claim in which representatives of the HR department indicated options that could be taken included an involuntary transfer and breaking the contract between Plaintiff and Defendant.  Plaintiff heard Mrs. Hautz (Director of Human Resources) say that HR "needed to put an end to the ongoing discourse [Plaintiff] had with the District."  *Id.* at ¶¶ 34–38.

o. Plaintiff followed up the meeting with an email in which she indicated, in part, that she did not consent to another transfer and would consider it to be retaliatory, and an email expressing her discontent regarding the proposed possible solution of breaking her contract. *Id.* at ¶¶ 39–40.

ECF No. 25 at 3–5.

On September 29, 2017, the EEOC issued a Dismissal and Notice of Rights to Plaintiff on her First EEOC Charge ("First Right to Sue").  ECF No. 17, attach. 2.  However, Plaintiff did not file a lawsuit within ninety days of receipt of the First Right to Sue.

On November 15, 2017, Plaintiff proceeded to file a second charge of discrimination against Defendant ("the Second EEOC Charge").  *Id.*, attach. 3.  Plaintiff again selected retaliation and religion as the bases of her charge, but she did not select the "Continuing Action" box.  *Id.* Further, Plaintiff indicated that January 23, 2017, was both the earliest and latest date

discrimination took place.  *Id.*  In the "Particulars" section, Plaintiff describes the following events

all of which took place on or after January 19, 2017:

> In or about 1996, I became employed as a Teacher Assistant with the above-mentioned employer.  On or about 8/30/1999, I became a Special Education Teacher.   Throughout my employment I have been subjected to disparaging comments and behaviors based upon my religion (Islam/Muslim).   I have complained throughout my employment and filed charges of discrimination.  On or about 1/23/2017, I was having a discussion with John White (Teacher) and Cassandra Gregory (Teacher) during hall duty.  Mr. White called Muslims "Radical Islamic Terrorists" therefore he was referring to me as well. I asked him to stop several times and told him I was offended.   He refused.   I emailed a formal complaint to Dr. Darwin Mills (Principal) and Human Resources.  My complaint was not resolved.  In or about 2/2017, I was told by a coworker (teacher) that she was going to exclude me from the lunch orders that were placed from one of the local churches.  On or about 2/6/2017, I was notified that I was being placed on administrative leave and directed to leave the building.  On or about 3/23/2017, I was constructively discharged.
>
> Ms. Nina Farrish (HR) stated I was placed on administrative leave due to a complaint being filed against me.  Ms. Hautz (HR Director) stated I was being transferred because it was in the employer's best interest.
>
> I believe that I was subject to harassment, discipline, demotion and constructively discharged in retaliation for filing a previous complaint with EEOC in 2016 protesting discrimination based upon my religion (Islam/Muslim) in violation of Title VII of the Civil Rights Act of 1964, as amended.

ECF No. 17, attach. 3.

On December 19, 2019, Plaintiff received a Notice of Dismissal and Right to Sue with

respect to the Second EEOC Charge ("Second Right to Sue").   Accordingly, Plaintiff filed the

instant Complaint on March 16, 2020, alleging in four counts claims for discrimination, retaliation,

and constructive discharge on the basis of religion, retaliation in violation of the Rehabilitation

Act of 1973, and breach of contract.  Defendant now alleges in the underlying Motion to Dismiss

that Plaintiff "fails to state a claim on any basis."  ECF No. 17 at 1.

## II. STANDARDS OF REVIEW

A motion filed under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of a complaint. *Jordan v. Alternative Resources Corp.,* 458 F.3d 332, 338 (4th Cir. 2006). While considering this motion, the court must assume that the facts alleged are true and view them in the light most favorable to the plaintiff. *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8(a) requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To be sufficient under Rule 8, the pleading must meet two basic requirements: it must contain sufficient factual allegations and those allegations must be plausible. *Adiscov, LLC v. Autonomy Corp.*, 762 F. Supp. 2d 826, 829 (E.D. Va. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). First, sufficient factual allegations include "more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do;" rather, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (2007). Second, to "nudge[] their claims across the line from conceivable to plausible," *id.* at 570, "plaintiff[s] [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. Indeed, to achieve factual plausibility, plaintiffs must allege more than "naked assertions . . . without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.*

Consequently, when considering a motion to dismiss, only those allegations which are factually plausible are "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (noting that

legal conclusions must be supported by factual allegations).  "At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted).

Additionally, Federal Rule of Civil Procedure 12(d) provides that if, on a motion brought under Federal Rule of Civil Procedure 12(b)(6), matters outside the pleadings are presented to the court, the motion must be treated as one for summary judgment under Federal Rule of Civil Procedure 56.  However, an exception is made for authentic documents which are referred to in the complaint and upon which the plaintiff relies in bringing the action, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic. *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also Blankenship v. Manchin,* 471 F.3d 523, 526 n.1 (4th Cir. 2006).

## III.  DISCUSSION

At the outset, the Court notes that the Complaint asserts, somewhat confusingly, various causes of action based on a number of incidents Plaintiff claims constitute religious discrimination and retaliation.  In Count I, Plaintiff asserts a claim for religious discrimination (Muslim) based on disparate treatment and hostile work environment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").  ECF No. 1 at ¶¶ 58–70.  Count II asserts a claim for retaliation based on disparate treatment she experienced after filing her First EEOC Charge, in violation of Title VII, and after advocating for the rights of disabled students, in violation of section 504 of the Rehabilitation Act of 1973, 29 USC § 701.  *Id.* at ¶¶ 71–87.  Count III asserts a claim for constructive discharge from Plaintiff's employment as a teacher for Newport News Public Schools,

in violation of Title VII, allegedly resulting from the aforementioned religious discrimination and retaliation claims. *Id.* at ¶¶ 88–92. Count IV alleges a state law claim for breach of contract in connection with the aforementioned constructive discharge claim. *Id.* at ¶¶ 93–96. Many of the same factual averments in the Complaint are relied on to support the different causes of action asserted. In its Motion to Dismiss, Defendant contends that Plaintiff has failed to adequately state each of these claims as a matter of law under Rule 12(b)(6), and that Plaintiff's claim for punitive damages and compensatory damages above the statutory cap are barred as a matter of law. ECF Nos. 16-17. The Court will address each Count in turn.

### A. Count I: Religious Discrimination

In its Motion to Dismiss, Defendant asserts that Plaintiff's discrimination claims of disparate treatment and hostile work environment in Count I of the Complaint are barred by Plaintiff's failure to administratively exhaust the claims, and are untimely.[2] Defendant also asserts that Plaintiff failed to state a claim for religious discrimination in violation of Title VII under both disparate treatment or hostile work environment theories. The Court addresses each of Defendant's arguments in turn.

#### 1. *Administrative Exhaustion*

An individual alleging discrimination in violation of Title VII must file an administrative charge with the EEOC and exhaust the available administrative remedies before filing a lawsuit in federal district court. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005). The United States Supreme Court recently held that Title VII's charge-filing requirement is a nonjurisdictional claim-processing rule. *See Fort Bend Cty., Texas v. Davis*, 139 S.Ct. 1843, 1851 (2019). "A

---

[2] Defendant's arguments are often made jointly in connection with other counts in Complaint. For instance, Defendant also asserts that Plaintiff failed to administratively exhaust her constructive discharge claim. *See* ECF No. 17 at 12–13. For the sake of clarity, however, the Court will address each argument separately in connection with the appropriate Count.

claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party 'properly raise[s]'" it.  *Id.* at 1849 (internal citation omitted).  The EEOC charge establishes the scope of the plaintiff's eventual civil suit.  "An administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination."  *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) (quoting *Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)); *see also Smith v. First Union Nat. Bank*, 202 F.3d 234, 247–48 (4th Cir. 2000) ("If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit").

In light of this prerequisite, it appears that Plaintiff has adequately exhausted her disparate treatment and hostile work environment claims.  Plaintiff's Second EEOC Charge alleged that throughout her employment she was "subjected to disparaging comments and behaviors based upon [her] religion[,]. . . harassment, discipline, demotion and constructively discharged in retaliation for filing a previous complaint."[3]  ECF No. 17, attach. 3.  She also describes a discussion with a co-worker who allegedly referred to her as a "radical Islamic terrorist," the subsequent unresolved complaint filed with Human Resources, her exclusion from lunch orders, her placement on administrative leave, and eventual demotion and transfer to the Juvenile Detention Center.  *Id.* Thus, in Count I of her Complaint, Plaintiff alleged that she was subject to disparate treatment and a hostile work environment on account of her Muslim religion.  ECF No. 1 at 10–12.

Although the language is not precisely the same, the allegations in the Complaint are

---

[3] For purposes of analyzing whether Plaintiff administratively exhausted the claims at issue, the Second EEOC Charge is the operative charge, due to untimely filing in relation to the First EEOC Charge, explained *infra*.

reasonably related to the facts alleged in the Second EEOC Charge and would be expected to follow from an administrative investigation.  *See* ECF No. 17, attach. 3.  This is particularly true as the Second EEOC Charge describes ongoing conduct that occurred prior to and throughout the relevant time period, indicative of the disparate treatment, hostile work environment, and constructive discharge articulated in the Complaint.  *Id.*  Thus, the Court **FINDS** that these claims of discrimination have been administratively exhausted.

 *2. Time Bar*

 "[A]n employee challenging an employment practice of an employer in Virginia has 300 days from the last date of alleged discrimination to file a charge with the EEOC.  If the statutory time period elapses between the allegedly discriminatory incident and the filing of the EEOC charge, the litigant is forever barred from Title VII relief."  *Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 619 (E.D. Va. 2011).  Similarly, upon receipt of a "Right to Sue" letter from the EEOC, an individual has ninety days to file a complaint in federal court.  42 U.S.C. § 2000e-5(f)(1).  Failure to comply with this statutory ninety-day requirement forfeits a party's right to pursue her claim.  *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984).  Despite the rigid construction of these procedural standards, courts have maintained that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."  *Mohasco Corp. v. Silver*, 477 U.S. 807, 826 (1980).

 Plaintiff filed two EEOC charges, both of which resulted in the issuance of right to sue letters permitting the initiation of a civil suit.  In her First EEOC Charge, Plaintiff specifically alleged discrimination based on religion and retaliation in the form of "harassment, different terms and conditions of employment and denied religious accommodations because of [her] religion, Islam (Muslim) and in retaliation because [she] participated in a protected activity."  ECF No. 17,

attach. 1.  Accordingly, the First Right to Sue letter permitted her to pursue civil litigation within the scope of those particular claims.  However, it is undisputed that Plaintiff failed to initiate the permitted civil action within the required ninety days after receiving her First Right to Sue letter.

On November 15, 2017, Plaintiff filed a Second EEOC Charge which ultimately resulted in the Second Right to Sue letter and the underlying Complaint at issue.  ECF No. 17, attach. 3. Notably, the Second EEOC Charge makes general references to the allegations in the First EEOC Charge, namely Plaintiff recounting that these issues were on-going throughout her career: "Throughout my employment I have been subjected to disparaging comments and behaviors based upon my religion (Islam/Muslim).  I have complained throughout my employment and filed charges of discrimination."  *Id.*  Plaintiff proceeded to provide specific accounts of the alleged on-going discrimination including: her January 23, 2017, discussion with her coworkers John White and Cassandra Gregory, during which they called Muslims "Radical Islamic Terrorists"; the subsequent administrative review process of that incident; her exclusion from lunch orders on or about February 2017; her placement on administrative leave; her demotion and transfer to the Juvenile Detention Center on or about April 10, 2017; and the alleged constructive discharge.  *Id.*

None of these allegations in the Second EEOC Charge were referenced in her First EEOC Charge as they all took place on or after January 19, 2017.  Apart from the general statement that Plaintiff experienced the alleged discriminatory behavior throughout her career, the only mention of her First EEOC Charge was her concluding statement that she "was subjected to harassment, discipline, demotion and constructively discharged *in retaliation for filing a previous complaint with EEOC* in 2016 protesting discrimination based upon my religion (Islam/Muslim)." ECF No. 17, attach. 3 (emphasis added).

In the instant motion, Defendant points out that Count I of the Complaint alleging religious

discrimination incorporates facts that are derived from the First EEOC Charge.  ECF No. 17 at 13; *see* ECF No. 1 at 11.  Accordingly, Defendant argues that this claim is barred due to Plaintiff's failure to timely file a Complaint within ninety days of her First Right to Sue letter.  Additionally, Defendant contends that allegations based on facts not referenced in the Second EEOC Charge are barred due to Plaintiff's failure to exhaust, and the Second EEOC Charge should be construed as solely a claim for retaliation.  ECF No. 17 at 10–11.  Defendant thus contends that all remaining claims are barred by Plaintiff's failure to timely file a Complaint within the ninety days of either right to sue letter stemming from the EEOC charge in which they were first presented.  *Id.* at 12.

Upon review of the Complaint, it is apparent that Claim I in the Complaint incorporates some factual allegations from the First EEOC Charge.  Notably, the Complaint specifically references the involuntary classroom changes and transfers, the recitation of Christian prayer at faculty meetings and student events, the receipt of unsolicited religious pamphlets in 2015, and a co-worker shouting "Praise Jesus" into Plaintiff's classroom in 2016.  ECF No. 1 at 11.  Each of these instances were either referenced in the First EEOC Charge or took place during the timeframe addressed in the First EEOC Charge.[4]  While the underlying Complaint was filed within ninety days of the Second Right to Sue letter, it is undisputed that Plaintiff did not timely file a Complaint within ninety days of the First Right to Sue letter.  Therefore, to the extent that these facts are alleged in support of discrete claims of disparate treatment due to religious discrimination, they are untimely.

Rather than dispute the alleged time bar, Plaintiff attempts to preserve the discrete claims of discrimination in her Complaint by highlighting the general references to ongoing

---

[4] The Court notes that while the Second EEOC Charge does not mention the unsolicited pamphlet and the co-worker shouting, it does emphasize that Plaintiff was subjected to harassment, "including but not limited to" the listed examples in the charge.  Many of the additional facts referenced in the Complaint appear to have taken place during that time frame and are grouped together accordingly for the purposes of this analysis.

discrimination in the Second EEOC Charge.  ECF No. 25 at 10.  Plaintiff specifically states that she was subjected to "disparaging comments and behaviors based upon [her] religion" throughout her employment, and she filed formal complaints throughout her employment including, but not limited to, her First EEOC Charge.  *See* ECF No. 17, attach. 3.  Plaintiff also argues that she raised new discrimination claims in her Second EEOC Charge.  ECF No. 25 at 10.  Accordingly, as Plaintiff filed her Complaint within ninety days of the Second Right to Sue letter, she argues that the ongoing nature of her discrimination, referenced in her Second EEOC Charge, preserves the claims from the First EEOC Charge.  *Id.*

While there appears to be some dispute over how to properly construe the language at issue in the Second EEOC Charge, it remains abundantly clear that Plaintiff failed to timely initiate civil action following the issuance of her First Right to Sue letter.  The limitation period in Title VII is well established—"a civil litigant may bring his or her own suit within 90 days after receiving a right-to-sue letter from the EEOC.  Civil suits may not be brought, however, after the expiration of the 90-day period."  *Neal v. Xerox Corp.*, 991 F.Supp. 494, 499 (E.D. Va. 1998) (internal citations omitted). Further, "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002).  Because Plaintiff allowed the ninety-day deadline to expire without filing suit, Plaintiff is barred from asserting Title VII claims for disparate treatment based on the factual allegations in her First EEOC Charge.  Consequently, due to Plaintiff's failure to timely file, the Court may not consider Plaintiff's discrete religious discrimination claims based on the factual allegations asserted in the First EEOC Charge.

As for the remaining allegations in her Second EEOC Charge, Defendant also argues that Plaintiff has asserted factual allegations in paragraphs 11 through 40 of her Complaint that fall

outside of the 300-day period prior to the filing her Second EEOC Charge.  As previously stated, "[A]n employee challenging an employment practice of an employer in Virginia has 300 days from the last date of alleged discrimination to file a charge with the EEOC.  If the statutory time period elapses between the allegedly discriminatory incident and the filing of the EEOC charge, the litigant is forever barred from Title VII relief." *Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 619 (E.D. Va. 2011).

Apart from those discrimination claims that are time-barred, the Court notes that Plaintiff has alleged additional bases for discrimination that took place both prior to and within the requisite 300-day window of her Second EEOC Charge.  Plaintiff filed her Second EEOC Charge on November 15, 2017, so the 300-day window began on January 19, 2017.  It appears that paragraphs 13 through 40 of the Complaint assert facts that include alleged discrimination that took place from 1999 to 2016.  ECF No. 1 at 3–5.  Further, paragraphs 28 through 40 assert factual allegations related to Plaintiff's First EEOC Charge that, as previously explained, are untimely.   In addition to their incorporation into an untimely filing, all of these facts took place prior to the 300-day window and are presumptively barred.  Conversely, paragraphs 41 to 57 assert facts of events that took place within the 300-day window.  *Id.* at 7–10.

Defendants rely on *National R.R. Passenger Corp. v. Morgan* in support of their argument that paragraphs 28–40 are time barred because they allege facts that occurred prior to the 300-day limitations window.  ECF No. 17 at 14 (citing *Nat'l R.R. Passenger Corp v. Morgan*, 536 U.S. 101, 105 (2002)).  In *National R.R. Passenger Corp*, the Court upheld a strict reading of the 300-day limitations window and further held that "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period."  536 F.3d U.S. at 112.  To the extent that these facts are considered discrete acts, Defendant correctly argues that paragraphs 28–40 are

time barred.

However, the Supreme Court also went on to draw a distinction between discrete acts in support of a discrimination claim and those supporting hostile environment claims which are "different in kind from discrete acts." *Id.* at 116.  The "unlawful employment practice" related to a hostile environment claim "cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.  Such claims are based on the cumulative effect of individual acts." *Id.* (internal citations omitted).  *See also Edwards*, 760 F. Supp. 2d at 620–21 (explaining that in evaluating a Title VII claim based on a hostile work environment, courts may consider actions outside the 300-day window under the continuing violation doctrine).

Defendant's argument does not acknowledge the distinction drawn in *National R.R. Passenger Corp.*, and incorrectly contends that the Fourth Circuit does not recognize a hostile work environment theory for religious discrimination.  ECF No. 17 at 19.  Defendant cites *Chaplin v. Du Pont Advance Fiber Systems*, which specifically noted that, at that time, the Fourth Circuit had yet to recognize a hostile work environment theory for religious discrimination.  *Id.* (citing 293 F. Supp. 2d 622, 628 n.8 (E.D. Va. 2003)).  Since the Court's ruling in *Chaplin*, however, the Fourth Circuit has clarified the standard and explicitly acknowledged a hostile work environment theory for religious discrimination.  *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 313 (4th Cir. 2008) (acknowledging that an employee's work environment is a term or condition of employment protected under Title VII, and applying that same standard to discriminatory hostile or abusive acts based on religion).[5]  Accordingly, pursuant to *National R.R. Passenger Corp.*,

---

[5] The EEOC has also acknowledged a hostile work environment theory for religious discrimination, citing *EEOC v. Sunbelt Rentals, Inc* as an example. *See EEOC Compliance Manual*, *U.S. Equal Employment Opportunity Commission*, https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#_Toc203359519 (last visited August 18, 2021).

Plaintiff's hostile work environment claim necessarily incorporates the cumulative facts that ultimately affected her work environment, in spite of the 300-day limitations window.

Here, Plaintiff does not overtly articulate that she was subject to a "hostile work environment" in her Second EEOC Charge, but she does clearly state that she was subject to ongoing harassment "throughout [her] employment" and outlines a series of factual allegations that would reasonably lead to an investigation of a hostile work environment claim. ECF No. 17, attach. 3. Moreover, in the Complaint Plaintiff asserts these same factual allegations and incorporates by reference additional facts that took place throughout her employment in support of her claim that "[a] reasonable person in [her] position would feel the unjust treatment by her co-workers and Defendant was so severe and pervasive that it created an abusive and hostile work environment." ECF No. 1 at ¶ 68. As such, the factual allegations subject to the 300-day limitations window must also be considered in light of their connection to Plaintiff's hostile work environment claim. As for paragraphs 11 through 40, Plaintiff reasonably argues that they are not discrete events, but rather they are "very specific events detailing an ongoing pattern and practice of religious discrimination that Defendants failed to address." ECF No. 25 at 10. This coincides with the kind of factual allegations that the Supreme Court distinguished for hostile environment claims in *National R.R. Passenger Corp.* Thus, even though the allegations in paragraphs 11 through 40 would otherwise be time-barred as discrete factual allegations of disparate treatment constituting discrimination, it is reasonable to construe paragraphs 11–40 as facts adequately alleged in support of Plaintiff's hostile work environment claim.

Accordingly, Plaintiff's disparate treatment claims for discrete incidents which are alleged to have occurred prior to January 19, 2017, are time-barred; such claims for discrete incidents after

that date are not.[6]   Further, Plaintiff's claim for hostile work environment is not time-barred.  With respect to the remaining facts at issue, the Court proceeds to analyze whether Plaintiff has pled facts sufficient to state a claim for religious discrimination in violation of Title VII, either for disparate treatment or hostile work environment.

### 3.  Disparate Treatment

Defendant contends that the remaining factual allegations are insufficient to state a claim for religious discrimination in violation of Title VII.  "Courts have recognized that employees may utilize two theories in asserting religious discrimination claims.  These theories are denominated as the 'disparate treatment' and 'failure to accommodate' theories.'"  *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (1996).  To assert a claim of discrimination in the form of disparate treatment under Title VII, a plaintiff must demonstrate: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007).  At the outset, it is undisputed that Plaintiff, by virtue of her religion, is a member of a protected class.  Defendant instead takes issue with the remaining elements of Plaintiff's disparate treatment claim.  Defendant contends that Plaintiff's claim fails because "she does not allege facts establishing the plausibility of her conclusory allegation that any adverse employment action was based upon her religion."  ECF No. 17 at 15.

Regarding the second element of a prima facie disparate treatment claim, Defendant argues that Plaintiff has not alleged that she was performing her job satisfactorily.  In the Complaint, Plaintiff alleged that "[f]or over seven years, since 2009, Mrs. Williams received positive feedback from faculty as well as parents for her participation in and contribution to [Individualized

---

[6] The Court analyzes whether discrete disparate treatment claims occurring after January 19, 2017 are sufficiently pled *infra*.

Education Program ("IEP")] meetings."  ECF No. 1 at ¶ 51.

Defendant contends that Plaintiff's assertions regarding her performance are conclusory, and relies on *Goode v. Central Virginia Legal Aid Society* in support of the proposition that conclusory allegations regarding positive feedback in the past are "not sufficient to create a tenable inference as to the quality of her job performance at the time of the relevant actions."  ECF No. 17 at 15 (citing *Goode*, No. 3:14cv281, 2014 WL 3945870, at *5 (E.D. Va. Aug. 12, 2014)).  Notably, the plaintiff in *Goode* alleged a list of various positions and awards he received in 2009 as proof of his satisfactory performance.  *Goode*, 2014 WL 3945870, at *4–5.  However, there was a lapse in evidence leading up to the plaintiff's termination in 2013, and the court ultimately found that the plaintiff's allegations were "insufficient to show that [the employer] was satisfied with the plaintiff's job performance *at the time of his termination.*"  *Id.* (emphasis added.).

The facts in *Goode* are distinct from the allegations set forth in this case.  Although Plaintiff does not reference awards like those in *Goode*, she does indicate that she received positive feedback regarding her performance from 2009 until 2017 at the time of her separation.  *See* ECF No. 1 at ¶ 51.  Defendant characterizes these facts as conclusory, but while assessing a motion to dismiss, "the court must assume that the facts alleged are true, and view them in the light most favorable to the plaintiff."  *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000).  Reviewing the Complaint and relevant factual allegations as a whole, it appears that Plaintiff's positive feedback from 2009 until her separation in 2017, from both parents and faculty, is a reasonably plausible fact in support of her allegation that she was performing her job satisfactorily.

As for the third element, Defendant argues that Plaintiff has not alleged that she suffered an adverse employment action.  "An adverse employment action is a discriminatory act which

adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004).  For Title VII discrimination claims, "[t]he standard for an adverse employment action in a disparate treatment case is different than in a retaliation case: in a discrimination case, our precedent mandates that the plaintiff has the higher burden of showing an 'ultimate employment' action that affects 'hiring, granting leave, discharging, promoting, and compensating.'" *Brockman v. Snow*, 217 F. App'x. 201, 205 (4thCir. 2007).  The Fourth Circuit has held, however, that "conduct short of ultimate employment decisions can constitute adverse employment action," and it has specified that reassignment may constitute an adverse employment action when it has "some significant detrimental effect." *James*, 368 F.3d at 376.

Here, the factual allegations Plaintiff contends constitute adverse employment actions include comments by coworkers, exclusion from lunch orders, HR investigations of other's complaints before hers, being "cut-off" and chastised during IEP meetings, being placed on administrative leave, the involuntary transfer from her role as a special education teacher to the Juvenile Detention Center, and her alleged constructive discharge.  Of this list, the only factual allegations that could possibly rise to the level of an ultimate employment decision are Plaintiff's placement on administrative leave, the proposed involuntary transfer to the Juvenile Detention Center, and her alleged constructive discharge.[7]  Regarding the proposed involuntary transfer, Plaintiff alleged that the transfer would have required,

> mandatory trainings including the Prison Rape Eliminating Act training, she would be subject to daily searches, her belongings would remain outside of her possession for the entirety of the school day, she would have to undergo medical testing, she would be stripped of her responsibilities regarding individualized education programs, she would not have her own classroom, she would be required to work

---

[7] Plaintiff alleges she resigned her employment rather than accept the involuntary transfer, thus constituting her constructive discharge.  ECF No. 1 at ¶¶ 54-57.  Plaintiff has asserted constructive discharge as a separate count, so the Court addresses that claim in its discussion of Count III, *infra*.

> with students who had been detained by law enforcement and/or were sent to the Juvenile Detention Program by court order, and she would be required to work under Principal John Day, a man Defendant knew [Plaintiff] had previously experienced mistreatment from and had failed complaints against.

ECF No. 1 at ¶ 55.  Considering these facts in the light most favorable to the Plaintiff, the proposed involuntary transfer plausibly appears to have been an ultimate employment action that would have adversely affected the terms, conditions, and benefits of Plaintiff's employment.  Plaintiff's factual assertions regarding the effect of her involuntary transfer as described, and all that it entailed, plausibly may constitute the type of "significant detrimental effect" described in *James v. Booz-Allen & Hamilton*.  Her contention that the forced transfer then left her with no choice but to leave her employment, thus constituting a constructive discharge, also could constitute an ultimate employment action because of its significant detrimental effect.  Finally, Plaintiff's placement on administrative leave also plausibly implicates a significant detrimental effect so as to constitute an adverse employment action.   Accordingly, Plaintiff has alleged sufficiently plausible facts to demonstrate that she suffered adverse employment actions for purposes of her Title VII disparate treatment claim.

Finally, regarding the fourth element of Plaintiff's disparate treatment claim, Defendant argues that Plaintiff has not sufficiently alleged that similarly situated employees outside her class received more favorable treatment.  ECF No. 17 at 17.  A plaintiff "is not required as a matter of law to point to a similarly situated . . . comparator in order to succeed on a . . . discrimination claim.  *Bryant v. Aiken Reg'l Med. Centers Inc.*, 333 F.3d 536, 545 (4th Cir. 2003).  When a plaintiff chooses to rely on specific comparators, however, then certain standards apply to determine if the comparators really are similarly situated.  On a motion to dismiss, the Plaintiff must allege sufficient facts demonstrating a similarly situated comparator.  *Robinson v. Loudon Cty. Public Sch.*, No. 1:16cv1604, 2017 WL 3599639, at *4 (E.D. Va. Aug. 18, 2017).

19

Where a Plaintiff "rel[ies] upon comparators . . . the given comparators must be 'similar in all relevant respects.'" *Emami v. Bolden*, 241 F. Supp. 3d 673, 680 (E.D. Va. 2017) (quoting *Haywood v. Locke*, 387 Fed. App'x 355, 359 (4th Cir. 2010) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *Bateman v. Am. Airlines, Inc.*, 614 F. Supp. 2d 660, 674–75 (E.D. Va. 2009)). "A showing of similarity to comparators 'would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Emami*, 241 F. Supp. 3d at 680 (quoting *Haywood*, 387 Fed. App'x at 359) (alteration in original).  "Comparators need not be identical; rather, they must be similar in all relevant aspects, 'such as conduct, performance, and qualifications.'" *Emami*, 241 F. Supp. 3d at 680 (quoting *Rayyan v. Virginia Dep't of Transportation*, No. 1:15cv01681, 2017 WL 123442, at *3 (E.D. Va. Jan. 12, 2017) (citing *Haywood*, 387 Fed. App'x at 359)) (emphasis in original).    In *Bateman*, the Court affirmed the similarity requirement and further dispelled with "unnecessary distinctions based strictly on job titles," rather than the "fundamental inquiry—relevance."  614 F. Supp. 2d at 674.

Plaintiff's Complaint and Brief in Opposition rely on similarly situated comparators to state a claim, and Plaintiff points to two co-workers she contends received more favorable treatment. ECF No. 1 at ¶¶ 41–50; ECF No. 25 at 14–15.  In connection with her claim that she was discriminatorily placed on administrative leave, Plaintiff alleges Principal Gerald, a Principal at a school where Plaintiff used to work, and another teacher named John White ("Mr. White"), and herself are appropriate comparators because they were all educators, their conduct was similar, but their treatment by Defendant in response to that conduct was different. *Id.*  Notably, Plaintiff does not reference any comparators regarding her involuntary transfer and constructive discharge.  In

light of that distinction, the conduct and resulting treatment at issue are the internal complaints in response to the harassing behavior and the resulting placement on administrative leave. Here, Plaintiff specifically alleges Principal Gerald is a comparator because Principal Gerald was involved in one of Plaintiff's internal complaints, and that Plaintiff and Mr. White are comparators because they filed counter complaints against one another and only she was placed on administrative leave as a result.

While Plaintiff has drawn out points of connection between herself and the alleged comparators, the Complaint does not allege facts sufficient to indicate that either individual is a proper comparator. Upon review of the Complaint, there are little to no facts specifically alleged regarding the suitability of Principal Gerald as a similarly situated comparator, other than the joint-involvement and disparate treatment following complaints filed against one another, ECF No. 1 at ¶¶ 48–49, 52. Even after construing the facts alleged in a light favorable to the Plaintiff, the Court cannot determine that Principal Gerald is a proper comparator, nor can the Court determine whether any disparate treatment was because of her religion.

Defendant takes great issue with the use of Principal Gerald as a comparator and highlights their differing roles as teacher and administrator. On its face, this appears to be a noteworthy distinction, but *Bateman* indicates that consideration based on mere job titles may draw unnecessary distinctions. While they clearly maintain two distinct roles that likely differ in position, performance, supervisors, and employment standards, these comparative respects are less relevant in light of the conduct at issue—the disproportionate response to the filing of internal complaints.

The more persuasive claim regarding Principal Gerald's lack of suitability as a comparator is the absence of similar activity. The similar activity alleged appears to be the joint involvement

21

in an internal complaint.  Plaintiff filed a complaint with the HR department against Principal Gerald, and Principal Gerald was not placed on administrative leave during the investigations. ECF No. 1 at ¶¶ 48-49. Conversely, the description in the Complaint describes, with a notable degree of ambiguity, that Plaintiff was placed "on administrative leave on February 6, 2017, following a complaint submitted by Principal Gerald against Mrs. Williams" after Principal Gerald spoke with Plaintiff's current principal, Dr. Mills.  *Id.* at ¶ 52.  Plaintiff did not allege the basis for Principal Gerald's complaint against Plaintiff, or *when* Principal Gerald's complaint was filed, and did not allege that she was placed on administrative leave *because of* Principal Gerald's complaint. *Id.*  While Plaintiff asserts her complaint against Principal Gerald stemmed from conduct that took place during the February 3, 2017 IEP meeting, there is no allegation that Principal Gerald's complaint against Plaintiff did as well.  Absent articulation as to the comparability of the reason Plaintiff was placed on administrative leave versus the reason Principal Gerald was not, Plaintiff has failed to allege sufficient facts to determine whether Principal Gerald is a proper comparator.

As for Mr. White, at first it appears that he might be a more suitable comparator.  Plaintiff alleged that they are both educators that were mutually engaged in the encounter that led to the internal cross-complaints against one another.  ECF No. 1 at ¶¶ 41–44.  Despite their similar positions, performance, and conduct Plaintiff complains that that HR investigated and addressed Mr. White's complaint first.  Defendant correctly points out that the instant Complaint appears to conflate the cross-complaints, investigation, administrative leave, and involuntary transfer without clearly identifying the alleged disparate treatment between herself and Mr. White.  The Complaint does not include factual allegations regarding Plaintiff's own conduct which might permit an inference that she engaged in similar conduct as Mr. White.  In fact, Plaintiff does not allege that she was placed on administrative leave *because of* Mr. White's complaint, she merely alleges that

HR investigated his complaint first.  Despite appearing potentially to be suitable comparators, the Complaint fails to establish a plausible basis for believing that Plaintiff and Mr. White were treated differently or that religion was the basis for the alleged disparate treatment.

Therefore, the Court **FINDS** that Plaintiff failed to plead plausible facts sufficient to state a claim for disparate treatment based on religion in violation of Title VII, specifically by failing to identify suitable comparators.

### 4. Hostile Work Environment

Embedded in Plaintiff's Count I are allegations of a hostile work environment. As previously stated, the Fourth Circuit recognizes a hostile work environment theory for religious discrimination. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 313 (4th Cir. 2008).  Therefore, the Court proceeds to assess the validity of Plaintiff's hostile work environment claim under the relevant precedent.[8]

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1).  "Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." *Sunbelt*, 521 F.3d at 313 (quoting *EEOC v. R&R Ventures*, 244 F.3d 334, 338 (4th Cir. 2001)).  In order to prove that a plaintiff suffered from a "discriminatorily hostile or abusive work environment, the [plaintiff] must demonstrate that the harassment was (1) unwelcome, (2) because

---

[8] Defendant argues that the hostile work environment claim must be dismissed because Plaintiff's opposition failed to address Defendant's arguments that: 1) the Fourth Circuit does not recognize a hostile work environment theory for religious discrimination; and 2) sufficient facts have not been pled to support this claim.  ECF No. 29 at 4.  The Court rejects this argument.  First, as previously explained, a claim for hostile work environment due to religious discrimination is cognizable in the Fourth Circuit. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 313 (4th Cir. 2008).  Second, Plaintiff's Complaint at least attempts to assert a hostile work environment claim, and Plaintiff, albeit sparsely, addressed hostile work environment in her opposition enough to permit the Court to review the Complaint for sufficiency under Rule 12(b)(6).

of religion, (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) imputable to the employer." *Id.* (internal citations omitted).

The parties do not appear to dispute the nature of the alleged harassment, the fact that it was because of her religion, and imputable to the employer.  Defendant solely argues that Plaintiff failed to allege sufficient facts to support that the conduct at issue was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive work environment. ECF No. 17 at 20.  In the Complaint, Plaintiff generally alleges that she was subject to unwelcome behavior throughout her career.  The Court specifically notes the factual allegations in the Complaint that possess a direct nexus to Plaintiff's religion, such as: the Christian prayer at mandatory faculty meetings and student events, despite her complaints, ECF No. 1 at ¶ 59; the receipt of unsolicited religious pamphlets, *id.* ¶ 62; coworkers shouting "praise Jesus" into her classroom, *id.*; the aforementioned 2017 interaction in which Mr. White repeatedly used the slur "radical Islamic terrorist" in reference to Muslims, *id.*; and the disparate response and investigation procedures following her formal complaints, *id.* at ¶ 63.

The "severe or pervasive" element of a hostile work environment claim "has both subjective and objective components."  *EEOC v. Sunbelt*, 521 F.3d 306, 310–312.  First, the plaintiff must show that he "subjectively perceived the environment to be abusive." *Id.* at 315. Second, "the plaintiff must demonstrate that the conduct was such that 'a reasonable person in the plaintiff's position' would have found the environment objectively hostile or abusive." *Id.* (internal citations omitted).  Here, Defendant does not genuinely challenge Plaintiff's subjective contention that the harassment was severe and pervasive to the Plaintiff personally, so the Court proceeds to consider the objective elements of the claim.

When considering the objective aspects of the claim, the Court looks to the "frequency of

the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*  Due to the fact specific nature of the assessment of a work environment, no single factor is dispositive. *Id.*  However, the Court acknowledges the outer limits of this consideration.  The harassing conduct must be "so extreme as to amount to a change in the terms and conditions of employment. . . . simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (citations omitted).

Of the relevant factors above, Plaintiff has alleged facts indicating that she endured unwelcome conduct throughout her employment, that took place with relatively moderate frequency, including notably undesirable behavior that manifested in the form of offensive comments directed towards her religion.  Plaintiff alleged that she was subject to mandatory Christian prayers  and other proselytizing, despite requests that such efforts cease; was repeatedly called a "radical Islamic terrorist;" and, her repeated complaints of such treatment were ignored. While the comments did not seem to be physically threatening, they could reasonably be perceived as humiliating and, by virtue of the classroom disruptions and changes, appear to have had an effect on Plaintiff's work performance.

It is well established that proving severity of conduct for a hostile work environment claim is a high bar, and it is equally apparent that "Title VII does not establish a 'general civility code for the American workplace.'" *Sunbelt*, 521 F.3d at 315 (quoting *Onacle v. Sundowner Offshore Services, Inc., et al.*, 523 U.S. 75, 80 (1998)).  In keeping with that balance, the Fourth Circuit has acknowledged that "workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or

pervasive standard." *Sunbelt*, 521 F.3d at 315.   Nonetheless, at this stage of the proceedings, assuming all Plaintiff's facts are true and giving her the benefit of all reasonable inferences as required, the Court **FINDS** that Plaintiff has asserted a plausible claim for hostile work environment.   Plaintiff's factual allegations plausibly go beyond creating "a merely unpleasant working environment," *Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996), and could constitute a work environment hostile to Plaintiff's Muslim religion.

Accordingly, Defendant's Motion to Dismiss Count I of the Complaint is **GRANTED** with respect to Plaintiff's religious discrimination claim for disparate treatment, and **DENIED** with respect to Plaintiff's claim for hostile work environment.

## B. Count II: Retaliation

In the Complaint, Plaintiff alleges that she was retaliated against for two reasons. First, Plaintiff contends that she engaged in federally protected activity under Title VII by submitting internal complaints and filing EEOC charges to oppose Defendant's unlawful religious discrimination, and that  Defendant took adverse employment action against Plaintiff in response to her protected activity. ECF No. 1 at ¶¶ 76–82. Second, Plaintiff alleges that she engaged in federally protected activity under the Rehabilitation Act by submitting complaints to Defendant regarding Defendant's compliance with applicable laws regarding disabled and special education students' rights, and that Defendant retaliated against her by over scrutinizing her, placing her on administrative leave, placing her under investigation, and allegedly constructively discharging her. The Court addresses each of Plaintiff's retaliation claims below. ECF No. 1 at ¶¶ 84–87.

### 1. Retaliation in Violation of Title VII

In the Complaint, Plaintiff alleges that from 2001–2014 she openly opposed and submitted formal complaints to Defendant regarding Defendant's allegedly unlawful practice of

discrimination based on her religion.  ECF No. 1 at ¶ 72.  Plaintiff alleges that Defendant responded to this opposition by "moving her classrooms, ignoring her concerns on the discriminatory behavior[,] . . . harshly scrutinizing her, failing to properly investigate complaints she submitted, and involuntarily transferring her."  *Id.*  During the 2015–2016 school year, Plaintiff alleges that she filed another internal complaint against a co-worker for giving her unsolicited religious pamphlets, and she voiced her complaints about the authorization of Christian prayer at mandatory faculty events.  *Id.* at ¶ 73.  Plaintiff alleges that Defendant responded to these complaints by moving her classroom again and changing her work responsibilities, but then "neglected to inform her [of these changes] until August of 2016, where co-workers who experienced any such change were informed more than two months prior."  *Id.* at ¶ 74.

On September 15, 2016, Plaintiff filed the First EEOC Charge.  *Id.* ¶ 78.  Following the filing of the First EEOC Charge, Plaintiff alleges that co-workers harassed her, which she complained about to Defendant, but Defendant took no corrective action.  *Id.* ¶ 79.  Plaintiff also alleges she was unreasonably and unnecessarily chastised, and placed on administrative leave for an investigation into her behavior, while the principal of the school and others "who were subject of prior complaints of inappropriate behavior were never placed on administrative leave."  *Id.* at ¶ 79.  Plaintiff then alleges she was involuntarily transferred to a "far less desirable and more hazardous work environment" and constructively discharged.  *Id.*  "In order to establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) the employer took a materially adverse action against her; and (3) there is a causal connection between the protected activity and the adverse action."  *Mascone v. American Physical Society, Inc.*, 404 Fed. App'x 762, 765 (4th Cir. 2010).

"To satisfy the second element, [a plaintiff] must show that a reasonable employee would

have found the challenged action materially adverse, meaning that the action 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Mascone*, 404 Fed. App'x at 765 (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).

"Save for situations in which the adverse employment decision follows the protected activity 'very closely,' 'mere temporal proximity' between the two events is insufficient to satisfy the causation element of the prima facie requirement." *Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). While the relevant legal authority does not impose a "bright temporal line" that is automatically indicative of a causal connection, there do appear to be notable trends that inform the Court's consideration. *See Perry*, 489 Fed. App'x at 643. Where the Plaintiff relies on temporal proximity alone, courts have previously limited plaintiffs to a range of two to three months between the protected activity and the materially adverse conduct. *Compare King v. Rumsfeld*, 328 F.3d 145, 151 n. 5 (4th Cir. 2003) (finding that "[two months and two weeks] between Carlson's notice of the complaint and the adverse employment action is sufficiently long so as to weaken significantly the inference of causation between the two events. Yet, in the context of this particular employment situation, this length of time does not undercut the inference of causation. . . ."), *with Perry*, 489 F. App'x at 643–44 (holding that "a three month lapse is too long to establish causation, without more").

Addressing the first element of Plaintiff's prima facie case, it is undisputed that Plaintiff's filing of formal complaints to Defendant's HR department and filing of the First EEOC Charge are protected activities. However, Defendant contends that Plaintiff failed to allege acts by Defendant that constitute materially adverse action and a causal connection between the protected activity and the alleged adverse action.

Regarding the second element, Plaintiff's Complaint outlines multiple examples of actions

28

taken by Defendant that she alleges were materially adverse including: moving her classroom following an internal complaint regarding mandatory prayer and unsolicited religious pamphlets, ECF No. 1 at ¶ 74; exclusion from lunch orders place with a church; unreasonably being chastised during IEP meetings; placement on administrative leave; involuntary transfer; and her alleged constructive discharge following her First EEOC Charge, *id.* at ¶ 79.

As for the first set of factual allegations regarding Defendant's allegedly adverse response to Plaintiffs internal complaints—the movement of classrooms, the lack of response, and the scrutiny at the IEP meeting—none of these allegations appear to plausibly rise to the requisite level of objective material adversity. That is to say that these actions are unlikely to have dissuaded a reasonable worker from making or supporting a charge of discrimination. While it is well established that the scope of the Title VII antiretaliation provision is broader than that of its substantive discrimination standard, the relevant authority clearly draws a distinction between conduct that is materially adverse and conduct that amounts to the "ordinary tribulations of the work place . . . petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington N. & Santa Fe Ry.*, 548 U.S. at 68. Taken collectively or separately, the acts allegedly constituting retaliation listed above are more akin to that of the ordinary tribulations of the workplace and do not provide a plausible basis to infer that a reasonable employee might have been dissuaded from making or pursuing a charge of discrimination.

However, the Court does find that placement on administrative leave and involuntary transfer are materially adverse actions for purposes of alleging retaliation. Defendant cites authority that generally indicates that reassignment or position transfers do not automatically amount to materially adverse employment action. However, that assertion overlooks the necessary qualifier that accounts for the specific context related to the alleged conduct. While reassignment

of job duties is not automatically actionable, "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position considering 'all the circumstances.'" *Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 3d 607, 632 (E.D. Va. 2011) (quoting *Burlington N. & Santa Fe Ry.*, 548 U.S. at 71). When properly considered, "a reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect." *Id.* To that end, the Court should consider any decrease in compensation, job title, level of responsibility, or promotion as relevant factors of a reassignment that is in fact materially adverse. *See Edwards*, 760 F. Supp. 2d at 632.

Here, Plaintiff characterizes the involuntary transfer as a demotion to a "far less desirable and more hazardous work environment," ECF No. 17, attach. 3; *see* ECF No. 1 at ¶ 55. Invoking the level of responsibility factor, Plaintiff also asserts that "she would be stripped of her responsibilities regarding individualized education programs." *Id.* The facts alleged regarding the shift in working conditions sufficiently demonstrates that the involuntary transfer to the Juvenile Detention Center would likely have some significant detrimental effect. Therefore, Plaintiff has alleged a plausible claim for materially adverse conduct in retaliation for Plaintiff engaging in a protected activity.

Regarding the third element of Plaintiff's prima facie case, it appears that temporal proximity is the only basis upon which Plaintiff attempts to establish a causal connection between the protected activity and the materially adverse action. ECF No. 1 at 12–15; ECF No. 25 at 17–18. Defendant contends that the time between Plaintiff's First EEOC Charge and the proposed involuntary transfer is insufficient to establish the causal connection necessary to assert a prima facie claim for retaliation. Plaintiff argues that in the alternative, there is temporal proximity

sufficient to establish causation between Plaintiff's submission of internal formal complaints to Defendant regarding her conversation with Mr. White, and the Defendant's placement of Plaintiff on administrative leave that occurred two weeks later.  ECF No. 25 at 17–18.

The temporal proximity between Plaintiff's First EEOC Charge and the proposed involuntary transfer is too long to allow the Court to infer a causal connection.  The First EEOC Charge was filed on September 15, 2016, and the proposed involuntary transfer occurred six months later on March 23, 2017.[9]  Thus, six months passed between the protected activity and the alleged adverse employment action. Accordingly, based on the facts alleged, the Court cannot infer a causal connection to plausibly state a claim of retaliation based solely on temporal proximity where the events occurred six months apart.

However, the temporal proximity between Plaintiff's internal complaints and the Defendant's placement of Plaintiff on administrative leave and involuntary transfer is sufficient to allow the Court to infer causation at this stage in the proceedings.  Plaintiff filed internal complaints regarding Mr. White's harassing comments on January 23, 2017; Defendant placed Plaintiff on administrative leave on February 6, 2017; and finally, Plaintiff's was notified of the involuntary transfer to the Juvenile Detention Center on March 23, 2017.  Thus, the Defendant's placement of Plaintiff on administrative leave occurred two weeks after Plaintiff's protected activity, and Defendant's decision to involuntarily transfer Plaintiff occurred two months after Plaintiff's protected activity.

Defendant argues that placement on administrative leave is not materially adverse action for retaliation purposes, *see Lacasse v. Didlake Inc.*, 194 F. Supp. 3d 494, 504 ("paid leave is not an adverse employment action"), and that this contention has not been properly exhausted because

---

[9] The Complaint indicates that Plaintiff received her Notice of Transfer on March 24, 2017, but her Second EEOC Charge indicates that she was transferred "[o]n or about March 23, 2017."

Plaintiff did not assert the formal complaints as a basis for retaliation in her Second EEOC Charge. ECF No. 17 at 28; ECF No. 29 at 15.   However, after reviewing the facts alleged, it is unclear whether Plaintiff's administrative leave was paid.   Additionally, as previously explained, the Court disagrees with Defendant's interpretation of Plaintiff's Second EEOC Charge.   Defendant seeks to focus on the overt statement regarding retaliation in the concluding sentence of the Second EEOC Charge.   "I believe that I was subjected to harassment, discipline, demotion and constructively discharged in retaliation for filing a previous complaint with EEOC in 2016."   ECF No. 17, attach. 3.   However, to find that the remaining information had not been procedurally exhausted would cause the Court to overlook the specific facts describing the formal complaint and the surrounding circumstances outlined at the beginning of the "Particulars" section in the Second EEOC Charge.   While there is only one overt statement of retaliation at the conclusion of the "Particulars" section, the Court cannot overlook the preceding facts that incorporate additional protected activities that can plausibly be linked to the materially adverse response from the Defendant.[10]

To that end, after considering the entirety of the Second EEOC Charge and Complaint, it appears that the sequence of factual allegations beginning with Plaintiff filing internal complaints regarding Mr. White's harassing comments on January 23, 2017; Defendant placing Plaintiff on administrative leave two weeks later on February, 6, 2017; and finally, Plaintiff's involuntary transfer on March 23, 2017, is sufficient to establish a plausible inference of causation for purposes

---

[10] Moreover, the Court notes that absence of a "bright temporal line" throughout the relevant authority on causation has necessarily been accompanied by analysis subject to the factual context of each case and employment situation. *See e.g. King*, 328 F.3d at 151 n.5 ("Yet, in the context of this particular employment situation, this length of time does not undercut the inference of causation").   Whether the facts alleged in the Second EEOC Charge are read collectively or individually, the context in the instant case includes ongoing protected activity—the formal complaints—that could plausibly serve as the causal link to the material adverse conduct.   The Plaintiff's overt statement of retaliation regarding the First EEOC Charge does not negate the apparent plausibility of retaliation based on protected activity alleged elsewhere in the same charge.

of alleging retaliation at this stage in the proceedings. Therefore, Defendants Motion to Dismiss Plaintiff's Title VII Retaliation Claim is **DENIED**.

### 2. Retaliation in Violation of the Rehabilitation Act

Plaintiff also alleges that from September 15, 2016, through November 18, 2017, she advocated on behalf of disabled and special education students and complained to Defendant about Defendant's lack of "compliance with laws regarding the rights of disabled and special education students." *Id.* at ¶ 83. In response to these complaints, Plaintiff alleges that she was overly scrutinized, placed on administrative leave, was subject to investigation by Defendant, and constructively discharged. *Id.* at ¶ 84.

Defendant contends that Plaintiff has conceded this claim by failing to respond to this part of Defendant's Motion in her Brief in Opposition. ECF No. 29 at 4. If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded. *Intercarrier Commc'ns, LLC v. Kik Interactive, Inc.*, No. 3:12-CV-771, 2013 WL 4061259, at *3 (E.D. Va. Aug. 9, 2013) (citing *Cureton v. U.S. Marshal Serv.*, 322 F. Supp. 2d 23, 27 (D.D.C. 2004)) ("When a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the case."); *see Chamblee v. Old Dominion Sec. Co., L.L.C.*, No. 3:13-CV-820, 2014 WL 1415095, at *8 (E.D. Va. Apr. 10, 2014) ("[Plaintiff] did not respond to the arguments made by any of the defendants with regards to Counts IX and X. As a result, [Plaintiff] abandoned these claims."). By failing to respond to this part of Defendant's motion, Plaintiff abandoned her Rehabilitation Act retaliation claim.

Notwithstanding, this claim is also time-barred. The Rehabilitation Act, like many civil rights statutes, does not contain a specific limitations period. Thus, federal courts "borrow the

state statute of limitations that applies to the most analogous state-law claim."[11]  *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011); *see also* 42 U.S.C.A. § 1988(a).  The Fourth Circuit has previously found that the Rights of Persons with Disabilities Act, Va. Code Ann. §§ 51.5-40 to -46 (the "Virginia Act") is the most appropriate state statute of limitations to apply to a Rehabilitation Act claim arising in Virginia.  *See Wolsky v. Med. Coll. of Hampton Roads,* 1 F.3d 222, 224 (4th Cir. 1993).  The Virginia Act is the most analogous statute because "it tracks the language of the federal law, requires regulations promulgated pursuant to state law to be consistent with the federal law, and affords the same remedies as the federal law." *Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Wolsky*, 1 F.3d at 224*; McCullough v. Branch Banking & Tr. Co.*, 35 F.3d 127, 130 (4th Cir. 1994).  Under the Virginia Act, an action must be commenced within one year of the occurrence of any violation of rights.  Va. Code Ann. § 51.5-46(B).

In this case, Plaintiff's Rehabilitation Act retaliation claim accrued, at the latest, on the date of her alleged constructive discharge on April 10, 2017.  ECF No. 1 ¶ 57.  Plaintiff would have needed to file her action by April 10, 2018, but Plaintiff did not file her Complaint until March 16, 2020.  *See* ECF No. 1.  Therefore, Defendant's Motion to Dismiss Plaintiff's Rehabilitation Act retaliation claim is **GRANTED**.

### C.  Count III: Constructive Discharge

Count III in Plaintiff's Complaint alleges that Defendant's discriminatory behavior was so intolerable that Plaintiff had no choice but to resign from her position and she was constructively

---

[11] "Congress enacted a catchall 4–year statute of limitations for actions arising under federal statutes enacted after December 1, 1990," but the Rehabilitation Act was enacted in 1973*.  Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004) (citing 28 U.S.C. § 1658); *see also A Soc'y Without A Name*, 655 F.3d 342, 347 (4th Cir. 2011).  Thus, the Court will not apply the catchall four-year statute of limitations established in *Jones*.

discharged.  ECF No. 1 at ¶¶ 89–92.  However, as correctly noted by Defendant, there is no stand-alone cause of action for constructive discharge.  *See Crockett v. SRA Int'l*, 943 F. Supp. 2d 565, 576-77 (D. Md. 2013) (collecting cases finding same).  Rather, constructive discharge may "satisfy the element of an adverse employment action in a substantive claim."  *Id.*  Thus, Plaintiff may proceed to assert constructive discharge in connection with her remaining Title VII hostile work environment and retaliation claims to demonstrate that she experienced an adverse employment action.

Nonetheless, it should be noted that the bar for establishing constructive discharge is high.  *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 211–12 (4th Cir. 2019).  An allegation of constructive discharge has two elements.[12]  The first element requires a plaintiff to prove that she was "discriminated against by [her] employer to the point where a reasonable person in [her] position would have felt compelled to resign."  *Green v. Brennan*, 136 S. Ct. 1769, 1776–77 (2016) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 148 (2004)); *Perkins*, 936 F.3d at 211–12 (requiring a showing that a reasonable person would have perceived no other choice than to resign).  The second element requires a plaintiff to show that she actually resigned.  *Perkins*, 936 F.3d at 212

Mere difficult or unpleasant working conditions, without more, are not so intolerable as to compel a reasonable person to resign.  *Perkins*, 936 F.3d at 212; *see e.g.*, *Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (finding intolerability standard not met where an employee was yelled at, told she was a poor manager, required to work with an injured back, and chastised in front of customers); *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 273 (4th Cir. 2001)

---

[12] Plaintiff's Brief in Opposition states an outdated legal standard for constructive discharge claims.  ECF No. 25 at 16.  Plaintiff cites caselaw from the 1970s and 1980s to state that a plaintiff must demonstrate the deliberateness of the employer's action as an element of a constructive discharge claim.  *Id.*  However, since the Supreme Court's 2016 decision in *Green v. Brennan*, 136 S. Ct. 1769, the Fourth Circuit no longer requires deliberateness as an element of constructive discharge.  *EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 144 (4th Cir. 2017) ("[A]s a result of intervening Supreme Court case law, 'deliberateness' is no longer a component of a constructive discharge claim.").

(finding that a reasonable person ostracized by his coworkers, denied a management position, and required to complete counseling for turning in an inaccurate time card would not have been compelled to resign); *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994) (finding dissatisfaction with work assignments, perceived unfair criticism, and difficult and unpleasant working conditions are not so intolerable as to compel a reasonable person to resign).

Accordingly, "[p]roof of constructive discharge requires 'a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment.'" *Perkins*, 936 F.3d at 212 (quoting *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 316 n.4 (3d Cir. 2006)); *Pa. State Police*, 542 U.S. at 146–47 (finding that a constructive discharge claim "entails something more" than a claim for a hostile work environment). Thus, if a court finds that a plaintiff failed to show she was subjected to a hostile work environment, then it necessarily follows that she cannot show constructive discharge. *Perkins*, 936 F.3d at 212 (citing *Dortch v. Cellco P'ship*, 770 F. App'x 643, 646 (4th Cir. 2019) (per curium) (holding that a district court correctly rejected plaintiff's constructive discharge claim after finding that she failed to prove her hostile work environment claim).

Whether Plaintiff can prove any set of facts establishing that she was constructively discharged in support of her hostile work environment and retaliation claims remains to be seen. However, because there is no separate cause of action for constructive discharge, Defendant's Motion to Dismiss Count III must be **GRANTED**.

### D. Count VI: Breach of Contract

Defendant argues that Plaintiff "fails to state a claim for breach of contract because [Plaintiff] has not identified nor asserted any facts to demonstrate either the existence of a legally enforceable obligation or defendant's violation or breach of that obligation . . ."  ECF No. 29 at

17.   The Court notes that Plaintiff did not respond at all to this contention in her Brief in Opposition.  ECF No. 25, *passim*.  Accordingly, Plaintiff has abandoned this claim.  *Chamblee*, 2014 WL 1415095, at *8.  Defendant's Motion to Dismiss Plaintiff's breach of contract claim in Count IV is therefore **GRANTED**.

### E. Damages

Plaintiff has asserted claims for compensatory and punitive damages under Title VII "in amounts no less than $1,500,000."  ECF No. 1 at ¶ 99.  Defendant contends that it is immune from punitive damages under Title VII and thus they must be struck, and that the compensatory damage claim exceeds the statutorily permissible cap on Title VII claims.  ECF No. 29 at 4.  Plaintiff did not address these contentions in her opposition and therefore has conceded Defendant's argument. *See* ECF No. 25, *passim*.  Notwithstanding, the law provides that punitive damages may not be recovered against Defendant, nor may compensatory damages exceed $300,000.

First, the Civil Rights Act of 1964 ("Act") provides in pertinent part as follows:

> A complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision*) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

42 U.S.C. § 1981a(b)(1) (emphasis added).  *See also Joyner v. Fillion*, 17 F. Supp. 2d 519, 529 (E.D. Va. 1998) (holding that punitive damages are barred against the Commissioner of the Revenue for the City of Portsmouth); *Bryant v. Locklear*, 947 F. Supp. 915, 916 (E.D.N.C. 1996) (finding that Plaintiff is barred from recovering punitive damages from the North Carolina State University under Title VII because they are considered a state agency); *Garrett v. Clarke County Bd. of Educ.*, 857 F. Supp. 949, 953 (S.D. Ala. 1994) (punitive damages in Title VII claim cannot be recovered against the school board and individual superintendents in their official capacities);

*Johnson v. North Carolina*, 905 F. Supp. 2d 712, 720 (W.D.N.C. 2012) (holding that punitive damages were barred by statute under Title VII against the State of North Carolina). The statute and case law make it clear that punitive damages under Title VII are not available against the State. 42 U.S.C. § 1981a(b)(1). It is undisputed that the Newport News School Board is a state instrumentality. Thus, the Court **FINDS** that Plaintiff is barred from recovering punitive damages.

Second, Title VII further provides that:

(3) Limitations
The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party-
-
. . . .

(D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

42 U.S.C. § 1981a(b)(3)(D). It is undisputed that Newport News School Board employs more than 500 employees. ECF No. 1 at ¶ 5; ECF No. 17 at 30. It therefore follows that the Civil Rights Act of 1964 limits Plaintiff's recovery on her Title VII claims to $300,000 in compensatory damages.

Furthermore, the Fourth Circuit has recognized that "[o]ther courts have uniformly held that Title VII's damages cap applies to each party in an action, not to each claim." *Hylind v. Xerox Corp.*, 481 F. App'x 819, 823 (4th Cir. 2012) (citing *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 264 (5th Cir. 2011); *see also Ward v. AutoZoners, LLC*, 958 F.3d 254, 262 (4th Cir. 2020) (noting with approval the application of the damages limit under § 1981a(b)(3)(D)). Thus, the Court **FINDS** that Plaintiff's maximum permissible recovery for compensatory damages is $300,000 for her remaining Title VII claims.

## IV. CONCLUSION

For the reasons stated herein, Defendants Motion to Dismiss, ECF No. 16, is **GRANTED IN PART and DENIED IN PART**.

A.  Defendant's Motion to Dismiss Plaintiff's Title VII Religious Discrimination claim in Count I for disparate treatment, is **GRANTED.**

B.  Defendant's Motion to Dismiss Plaintiff's Title VII Religious Discrimination claim in Count I for hostile work environment, is **DENIED**.

C.  Defendant's Motion to Dismiss Plaintiff's Title VII Retaliation claim in Count II is **DENIED**.

D.  Defendant's Motion to Dismiss Plaintiff's Rehabilitation Act Retaliation claim in Count II is **GRANTED**.

E.  Defendant's Motion to Dismiss Plaintiff's Constructive Discharge claim in Count III is **GRANTED**.

F.  Defendant's Motion to Dismiss Plaintiff's Breach of Contract claim in Count IV is **GRANTED**.

F.  Defendant's Motion to Dismiss Plaintiff's claim for punitive damages is **GRANTED**.

G.  Plaintiff's claim for compensatory damages is limited to $300,000.

The Clerk is **DIRECTED** to forward a copy of this Order to all counsel of record.

It is so **ORDERED**.

Lawrence R. Leonard
United States Magistrate Judge

Newport News, Virginia
August 19, 2021